UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

$21,446.00 IN U.S. CURRENCY,

    Defendant.

Case No. _____

### VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

The plaintiff, United States of America, through its attorneys Andrew M. Luger, United States Attorney for the District of Minnesota, and Craig R. Baune, Assistant United States Attorney, in a civil cause of action for forfeiture, alleges as follows in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

### NATURE OF THE ACTION

1. This is an action to forfeit and condemn to the use and benefit of the United States of America $21,446 in U.S. Currency for violations of 21 U.S.C. § 841 *et seq.*

### THE DEFENDANT *IN REM*

2. The defendant *in rem* is $21,446 in U.S. Currency seized from Augustus Nick Phillips, Jr. at the Minneapolis/St. Paul International Airport on January 24, 2022. The defendant *in rem* is in custody of the United States Marshals Service.

## JURISDICTION AND VENUE

3. Plaintiff brings this action *in rem* in its own right to forfeit and condemn the defendant $21,446 in U.S. Currency ("the Defendant Currency"). This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345 and over an action for forfeiture under 28 U.S.C. § 1355(a).

4. This Court has *in rem* jurisdiction over the Defendant Currency under 28 U.S.C. § 1355(b). Upon the filing of this Complaint, the Plaintiff requests that the Clerk of Court issue an arrest warrant *in rem* pursuant to Supplemental Rule G(3)(b)(i), which the Plaintiff will execute upon the Defendant Currency pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

5. Venue is proper in the District of Minnesota pursuant to 28 U.S.C. § 1355(b)(1) because the acts or omissions giving rise to the forfeiture occurred in this District, and pursuant to 28 U.S.C. § 1395 because the Defendant Currency is located in this District.

## FACTS

6. On or about January 23, 2022, the Minneapolis/St. Paul International Airport Police ("APD") and members of the Drug Enforcement Administration ("DEA") received information from a Confidential Source regarding a suspicious travel itinerary for Nicolas Maharri Starnes ("Starnes") and Tirik Rene Reeves ("Reeves").

7. Starnes and Reeves separately purchased one-way airfare on Sun Country on January 21, 2022 for a flight departing on January 24, 2022 from Minneapolis/St. Paul International Airport ("MSP") to Los Angeles International Airport ("LAX").

8. On or about January 24, 2022, the APD and members of the DEA received information from a Confidential Source regarding a suspicious travel itinerary for Augustus Nick Phillips, Jr. ("Phillips Jr.").

9. Phillips Jr. purchased one-way airfare on Sun Country on January 23, 2022 for the same flight as Starnes and Reeves departing on January 24, 2022 from MSP to LAX.

10. Los Angeles is considered a source city, and California is considered a source state, for the production of narcotics. Airline tickets purchased at the "last minute" are commonly used by people involved in trafficking narcotics and narcotics proceeds. Often, they believe they will avoid law enforcement if they wait until the last minute to purchase their airfare. In some cases, they don't know ahead of time when they will have collected all of the drug proceeds to bring to the narcotics source. In other cases, they don't know ahead of time when the narcotics will be ready to be retrieved. One-way itineraries are also common with narcotics traffickers, who often return to the consumption area via a mode of transportation that is subject to less security than commercial air travel.

11. On January 24, officers observed Starnes, Reeves, and Phillips Jr. travelling together in a group.

12. Officers are aware that cash couriers often split large amounts of narcotics proceeds among multiple passengers, and often employ individuals without criminal histories, in an effort to minimize loss or attempt to avoid the attention of law enforcement.

13. An APD detective utilizing a certified narcotics-detection canine was in the departure gate area conducting open-air sniffs of carry-on luggage. The detective who was handling the canine communicated to the enforcement team that her canine made a positive

alert to Reeves as he walked out of the gate area towards a shop across the concourse. The canine alerts to the odor of controlled substances.

14. Reeves was approached by officers who explained that a canine had made a positive alert. Reeves stated that he was flying out to L.A. with his friends to hangout for a couple days and relax. The officers asked if they could search Reeves' carry-ons, a backpack and duffle bag.

15. After initially refusing, Reeves was told about the search warrant process. Reeves requested that he be permitted to call someone. The officers told Reeves he could call whomever he needed to and to take as much time as he needed. After a lengthy private conversation, Reeves returned and gave consent for the search.

16. When Officers discovered folded-over wads and rubber banded bundles of currency, the officers asked Reeves about the large amount. Reeves estimated that he had about $12,000. When asked about currency seen poking out of his front pocket, Reeves stated that Phillips Jr. had given him the loose bundle of currency to carry, but another rubber banded roll was his.

17. Officers collected all of the currency and laid it on the floor to allow the canine an opportunity to check it. The canine made a positive alert to the collected currency.

18. A later count of the currency revealed a total $26,030.00, composed of: 85 $100 bills, 118 $50 bills, 579 $20 bills, and 5 $10 bills.

19. Phillips Jr. had come over to observe and follow along with Reeves' interaction with law enforcement. An officer asked Phillips Jr. if he had any questions

about the Reeves interaction. The officer also noticed that Phillips Jr. had bloodshot eyes, slow speech, and hyper-relaxed body movements consistent with persons under the influence of narcotics.

20. Upon Phillips Jr.'s consent, an officer began a search of one of Phillips Jr.'s backpacks. The backpack smelled strongly of marijuana and contained a large amount of loose and rubber-banded currency. Phillips Jr. then consented to a search of his second pack. In total the officer found four large bundles and a loose roll of currency. Phillips Jr. stated that he thought he had about $8,000.00.

21. A later count of the currency revealed a total of $21,446.00, composed of: 35 $100 bills, 131 $50 bills, 560 $20 bills, 15 $10 bills, 8 $5 bills, and 6 $1 bills.

22. As officers were speaking with Reeves and Phillips Jr., the officers' canine gave a third positive alert from Starnes' bags.

23. When an officer requested consent to search Starnes' bags, he asked to wait to make his decision until he found out what Reeves had agreed to. Upon seeing that Reeves' bags were being searched, Starnes gave permission to search his bags.

24. A later count of the currency revealed a total of $13,500.00, composed of: 37 $100 bills, 36 $50 bills, and 400 $20 bills.

25. Collectively, the group had been carrying a total of $60,976.00.

26. Based on the foregoing, DEA commenced administrative forfeiture proceedings for all of the seized currency.

27. This Complaint concerns only the $21,446.00, seized from Phillips Jr. The $13,500.00 and $26,030.00 amounts were administratively forfeited after no one filed a claim contesting the forfeiture of those sums of currency.

28. Phillips Jr. claimed at the airport that he was planning on partying in L.A. for a month with Reeves and Starnes. He claimed that the money was proceeds from freelance barber work and also from selling clothes for a company called "New Muse."

29. Officers asked Phillips Jr. if he was able to show any bank records, sales receipts, barber license, or any information substantiating the legitimate origin of the currency. Phillips Jr. was not able to do so, and stated that he did not file taxes and did not have any documentation to support the claim that the money was earned by legitimate means.

30. Investigators contacted New Muse, LLC. The proprietor told investigators that she has no employees and does not know Phillips Jr.

## BASIS FOR FORFEITURE

31. The allegations in the preceding paragraphs are re-alleged and incorporated by reference.

32. The defendant $21,446.00 in U.S. Currency is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it was furnished or intended to be furnished in exchange for a controlled substance, constitutes proceeds traceable to such an exchange, or was used or intended to be used to facilitate a violation of the Controlled Substances Act.

## CLAIM FOR RELIEF

33. The plaintiff requests that the Court issue a warrant for the arrest and seizure of the Defendant *in rem*, that notice of this action be given to all persons who reasonably appear to be potential claimants of interests in the Defendant *in rem*, that the Defendant *in rem* be forfeited and condemned to the United States of America, that the plaintiff be awarded its costs and disbursements in this action, and for such other and further relief as this Court deems proper and just.

Dated: June 17, 2022

ANDREW M. LUGER
United States Attorney

*s/Craig Baune*
BY: CRAIG R. BAUNE
Assistant U.S. Attorney
Attorney ID No. 331727
600 United States Courthouse
300 South Fourth Street
Minneapolis, MN 55415
Phone: 612-664-5600
Craig.baune@usdoj.gov

## VERIFICATION

I, Burton V. Crary, verify and declare under penalty of perjury as follows:

I am a Task Force Officer with the U.S. Drug Enforcement Administration ("DEA"). I have been a Task Force Officer since April 20, 2022. I am currently employed as a Minnesota State Trooper since May of 2014, and have significant experience with narcotics interdiction. I have previously been a Task Force Officer with the DEA from April of 2016 to April of 2019 as well. I have read the foregoing Verified Complaint *In Rem* and know the contents thereof, and the matters contained in the Verified Complaint are true to my own knowledge, except that those matters not within my knowledge are alleged on information and belief, and I believe those matters to be true.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information provided to me by other law enforcement agencies and Officers, and information I have learned by reviewing reports prepared by other law enforcement agencies and Officers, as well as my investigation of this case, together with others, as a DEA Task Force Officer.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Dated: June 15, 2022
*s/ Burton V. Crary*
Burton V. Crary
U.S. Drug Enforcement Administration
Task Force Officer